French, J.,
concurring in part and dissenting in part.
{¶ 23} I agree with the majority that appellant, the Northeast Ohio Regional Sewer District (the “Sewer District”), has authority under both R.C. Chapter 6119 and its charter to implement a regional stormwater-management program, but I respectfully disagree with the majority’s conclusion that the Sewer District has statutory authority to finance that program by presently assessing the stormwater fees that are set out in Title V of its Code of Regulations, which implements the stormwater-management program. Accordingly, I concur in part and dissent in part.
{¶ 24} Both the majority opinion and Justice Kennedy’s dissent recognize that the Sewer District’s statutory authority over stormwater hinges, in part, upon the meaning of the term “waste water” in R.C. 6119.01(B) and, specifically, upon whether that term includes uncontaminated stormwater. I agree with the majority opinion that R.C. 6119.011(K) is unambiguous. It defines “waste water” as encompassing two types of water: (1) “any storm water” and (2) “any water containing sewage or industrial waste or other pollutants or contaminants derived from the prior use of the water.”[1] Under R.C. 6119.01(B), the Sewer District has authority to collect, treat, and dispose of stormwater, whether or not it contains sewage, industrial waste or other pollutants.
{¶ 25} Other provisions in R.C. Chapter 6119 reinforce the Sewer District’s statutory authority over stormwater. A regional water and sewer district’s broad *393 authority includes the authority to acquire, construct, improve, maintain, repair, and operate water-resource projects, including waste-water facilities and water-management facilities. R.C. 6119.011(G) and (S); R.C. 6119.06(G). Both “waste water facilities” and “water management facilities” encompass facilities dealing with stormwater. R.C. 6119.011(L) and (M). Additionally, R.C. 6119.19 states that “the board of trustees of a regional water and sewer district may provide a system of sanitary and/or storm water sewerage, herein referred to only as sewerage, for any part of the area included within the district.” (Emphasis added.) Based upon these provisions and the statutory definition of “waste water,” which encompasses stormwater, I agree with the majority’s conclusion that the Sewer District has the authority to manage stormwater.
{¶26} I likewise agree with the majority that the Sewer District’s charter authorizes it to implement a regional stormwater-management program. The charter tracks the language of R.C. 6119.01(B) and states the Sewer District’s purpose as “the establishment of a total wastewater control system for the collection, treatment and disposal of wastewater within and without the District.” In re Establishment of Cleveland Regional Sewer Dist., Cuyahoga C.P. No. SD 69411 (May 25, 1979), Exhibit A, ¶4. In light of the inclusion of stormwater within the preexisting statutory definition of “waste water,” the charter authorizes the Sewer District to establish a stormwater-management system, consistent with R.C. Chapter 6119.
{¶ 27} Water pollution, stemming from “[t]he increase in the amount of wastewater in the Metropolitan Cleveland area resulting from the increase in population and the expansion of industry in the many political subdivisions outside of the City of Cleveland,” was a driving force behind the creation of the Sewer District. Id. at ¶ 3. The charter authorizes the Sewer District to “plan, finance, construct, operate and control wastewater treatment and disposal facilities, major interceptor sewers, all sewer regulator systems and devices, weirs, retaining basins, storm water handling facilities, and all other water pollution control facilities of the District.” Id. at ¶ 5(c)(1). But the charter also expressly authorizes the Sewer District to undertake stormwater-control measures. Paragraph 5(m), which governs the Sewer District’s authority with respect to “Local Sewerage Collection Facilities and Systems,” states that “[t]he District shall have authority pursuant to Chapter 6119 of the Ohio Revised Code to plan, finance, construct, maintain, operate, and regulate local sewerage collection facilities and systems within the District, including both storm, and sanitary sewer systems.” (Emphasis added.) And paragraph 5(m)(3) specifically directs the Sewer District to “develop a detailed integrated capital improvement plan for regional management of wastewater collection and storm drainage designed to identify a capital improvement program for the solution of all intercommunity drainage problems (both storm and sanitary) in the District.”
*394 {¶ 28} Appellees, political subdivisions and property owners within the Sewer District, argue that Title V of the Sewer District’s Code of Regulations, which sets out the regional stormwater-management program, conflicts with the charter’s provision that local communities retain authority and responsibility for maintaining and operating their local sewerage collection systems absent a written agreement placing that responsibility on the Sewer District. But Title V does not provide for the Sewer District’s ownership of or responsibility for sewerage collection facilities and systems owned or operated by the member communities, and the Sewer District asserts that it does not intend to interfere with the member communities’ local systems.
{¶ 29} Title V distinguishes between local stormwater systems and the regional stormwater system. “Regional Stormwater System” means “[t]he entire system of watercourses, stormwater conveyance structures, and Stormwater Control Measures in the District’s service area that are owned and/or operated by the District or over which the District has right of use for the management of stormwater, including both naturally occurring and constructed facilities.” Northeast Ohio Regional Sewer Dist. Code of Regs., Section 5.0218. “Local Stormwater System,” on the other hand, includes watercourses, stormwaterconveyance structures or stormwater-control measures “owned and/or operated by a private entity or a unit of local government other than the District” and “not designated as part of the Regional Stormwater System.” Id,., Section 5.0212. So, the regional stormwater system does not include watercourses, conveyance structures or stormwater-control measures owned or operated by the local communities absent agreement between the local communities and the Sewer District. By limiting the reach of the regional stormwater system, Title V does not conflict with the Sewer District’s charter, and I agree with the majority that the charter authorizes the Sewer District to build and operate a regional stormwater-management system.
{¶ 30} Despite my agreement with the majority’s determination that the Sewer District has authority to manage uncontaminated stormwater, I disagree with the majority’s conclusion that R.C. 6119.09 authorizes the stormwater fees set out in Title V. Appellees argue that the Sewer District cannot impose its stormwater fees for two reasons: (1) because R.C. Chapter 6119 does not authorize the fees and (2) because the fees amount to an unlawful tax.
{¶ 31} In her dissent, Justice Kennedy adopts appellees’ second argument— that the charges amount to an unlawful tax. But I agree with the Sewer District’s assertion that that issue is not properly before us. The Sewer District asked this court to adopt a proposition of law stating that stormwater-management charges based upon the amount of impervious surface a parcel contains— like the stormwater fees here — do not constitute an illegal tax. This court, *395 however, declined jurisdiction over that proposition of law. Northeast Ohio Regional Sewer Dist. v. Bath Twp., 138 Ohio St.3d 1413, 2014-Ohio-566, 3 N.E.3d 1216. Having declined jurisdiction over that proposition of law, the question whether the stormwater fees are an unlawful tax is not before the court.
{¶ 32} In my view, it is appellees’ other argument — regarding statutory authority — that is persuasive. The majority reasons that because a “water resource project” includes a facility to be acquired, constructed or operated, the Sewer District may charge fees for that purpose under R.C. 6119.09. I respectfully disagree.
{¶ 33} R.C. 6119.09 authorizes a regional water and sewer district to
“charge, alter, and collect rentals or other charges * * * for the use or services of any water resource project or any benefit conferred thereby and contract * * * with one or more persons, one or more political subdivisions, or any combination thereof, desiring the use or services thereof, and fix the terms, conditions, rentals, or other charges * * * for such use or services.”
(Emphasis added.) See also R.C. 6119.06(W). The Sewer District contends that its stormwater fees represent charges for the use, services or benefits of a water-resource project.
{¶ 34} Although R.C. 6119.011(G) defines “water resource project” to include a project “to be acquired, constructed, or operated by or leased to a regional water and sewer district,” the district may charge only “for the use or services of’ or “any benefit conferred” by a water-resource project. R.C. 6119.09. R.C. 6119.09 contemplates uses or services that may be contracted for. The question, therefore, resolves to whether a water-resource project that will be acquired, constructed or operated in the future affords uses, services or benefits in the present, so as to authorize charges under R.C. 6119.09 — a question the majority does not address.
{¶ 35} The Eighth District concluded that the Sewer District “improperly employed R.C. 6119.09 to generate revenues for the costs of its” regional stormwater-management program because the stormwater fees are “unrelated to any use or services afforded to a property owner by a ‘water resource project.’ ” 2013-Ohio-4186, 999 N.E.2d 181, ¶ 53, 56. Appellees likewise contend that the Sewer District may not impose stormwater fees for a water-resource project that the Sewer District has not yet acquired, constructed or operated, because until it has done so, there is no use, service or benefit for which to charge.
*396 {¶ 36} The Sewer District directs this court to the trial court’s factual findings regarding the uses and services the regional stormwater-management program provides. The trial court found that property owners within the Sewer District passively “ ‘use’ the unmanaged Regional Stormwater System as rainfall creates runoff from each parcel.” The trial court also found that the Sewer District provides the “service of effective transportation of stormwater,” resulting in decreased flooding and erosion. Finally, the court stated that the regional stormwater-management system will provide benefits, including improvements in water quality and wildlife habitats and the reduction of future stormwatermanagement costs. But those findings depend upon the Sewer District acquiring, constructing, and operating a water-resource project. Whether property owners would benefit in the future from the system the Sewer District intends to create and operate sidesteps the relevant issue: whether the Sewer District currently offers uses or services relating to the stormwater-management system for which it may charge.
{¶ 37} Nothing in R.C. 6119.09 suggests that the Sewer District may presently impose a fee for uses or services it will be able to provide only in the future. The statute requires current usage, service or benefits to justify the collection of stormwater fees. Until the Sewer District acquires, constructs or begins to operate a water-resource project relating to regional stormwater management, it has no use, service or benefit to provide in exchange for the stormwater fees it seeks to extract from property owners.
{¶ 38} Even so, the Sewer District is not without recourse. A regional water and sewer district may levy and collect taxes and special assessments and may issue revenue bonds. R.C. 6119.06(1) and (J); R.C. 6119.12; R.C. 6119.18; R.C. 6119.42. It may receive and accept grants from federal and state agencies for or in aid of the construction of water-resource projects. R.C. 6119.06(U). And it may enter into cooperative agreements with one or more political subdivisions to fund the acquisition or construction of a water-resource project. R.C. 6119.09.
{¶ 39} Because I conclude that R.C. 6119.09 does not authorize the Sewer District to impose stormwater fees for the use and service of a water-resource project to be acquired, constructed or operated by the Sewer District in the future, I dissent from the majority’s determination that the Sewer District is presently authorized to impose the stormwater fees set out in Title V of its Code of Regulations. In all other respects, I concur.

. Ohio is not alone in including stormwater within its definition of wastewater. See, e.g., Ky.Rev. Stat.Ann. 65.8903(4) (“ “Wastewater’ includes stormwater”); N.J.Stat.Ann. 58:27-3(e) (“ ‘Wastewater’ means residential, commercial, industrial, or agricultural liquid waste, sewerage, storm water runoff, or any combination thereof * * * ”); Wis.Adm.Code SPS 381.01(276) (“ ‘Wastewater’ means clear water, storm water, domestic wastewater, industrial wastewater, sewage or any combination of these”).